UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| American Insurance Service Company, | |
| Appellant, | Case No. 16-cv-03525 |
| v. | Judge John Robert Blakey |
| WGIN Enterprises, LLC and Irwin Nissen, | |
| Appellees. | |

## MEMORANDUM OPINION AND ORDER

In this bankruptcy appeal, American Insurance Service Company ("AISC") argues that the Bankruptcy Court erred when it dismissed AISC's Chapter 7 bankruptcy petition on the basis that it was filed in bad faith. WGIN Enterprises LLC ("WGIN") and its chief executive Irwin Nissen ("Nissen") argue that the Bankruptcy Court's decision was properly based upon its review of the totality of circumstances presented in this case, such that there is no reversible error. For the reasons set forth below, this Court affirms the decision of the Bankruptcy Court.

### I.  Standard of Review

Pursuant to 28 U.S.C. § 158(a), this Court has jurisdiction to hear appeals from rulings of the Bankruptcy Court. On appeal, this Court reviews the Bankruptcy Court's legal findings *de novo* and its factual findings for clear error. *In re Mississippi Valley Livestock, Inc.*, 745 F.3d 299, 302 (7th Cir. 2014). Because the Bankruptcy Court's decision here turned upon a finding of bad faith, this Court's

review is for clear error. *See Citizens Bank v. McKendree*, Case No. 06-0049, 2006 WL 2193053, at *2 (S.D. Ill. Aug. 1, 2006) ("Whether a debtor has acted in bad faith is a question of fact that is subject to review for clear error.") (internal citation omitted); *see also Matter of Love*, 957 F.2d 1350, 1354 (7th Cir. 1992) ("The bankruptcy court's good faith finding is a purely factual finding evaluated under the clearly erroneous standard of review.").

The clearly erroneous standard "requires this court to give great deference" to the bankruptcy court, the trier of fact. *Id.* Under this standard, if the lower court's account of the evidence is plausible in light of the record viewed in its entirety, a reviewing court may not reverse "even if convinced that it would have weighed the evidence differently as trier of fact." *Id.* Indeed, this Court is only empowered to reverse the Bankruptcy Court under the clearly erroneous standard if, based upon the entire record, the Court "is left with the definite and firm conviction that a mistake has been committed." *EEOC v. Sears, Roebuck & Co.*, 839 F.2d 302, 309 (7th Cir. 1988) (citations and quotation marks omitted).

## II. Facts and Procedural History

AISC is an Illinois insurance corporation originally formed in 2005. [9] at 7. In 2009, WGIN filed a lawsuit against AISC in the Circuit Court of Cook County, seeking recovery of ostensibly unpaid commissions totaling approximately $1,600.000. [8-2] at 36. The trial of that underlying state court case was originally set to commence on January 12, 2015. *Id.* at 70. That trial never occurred because AISC filed its voluntary bankruptcy petition in this case on January 8, 2015. *Id.*

AISC's bankruptcy petition only identified five creditors. *Id.* at 25-28. Three of these creditors were other businesses owned and managed by AISC's CEO and/or his business partner. [9] at 7-14. The fourth creditor was attorney David Roe, who represented AISC in the underlying state court litigation. *Id.* at 13. The fifth creditor was WGIN. *Id.* WGIN's claim was worth approximately $1,600,000, while Attorney Roe's claim was worth only $7,300. *Id.*

On July 13, 2015, WGIN and Nissen filed a Motion to Dismiss AISC's Chapter 7 bankruptcy petition on the basis that it had been filed in bad faith. [8] at 4. More specifically, WGIN and Nissen argued that AISC's bankruptcy petition had only been filed to delay their underlying state court litigation. *Id.* After the Motion to Dismiss was filed, AISC filed additional disclosures with the Bankruptcy Court. [9] at 12. These disclosures identified a second creditor, who was owed less than $5,000. *Id.*

On January 20, 2016, the Bankruptcy Court conducted a hearing on AISC's Motion to Dismiss. [8] at 5. At that hearing the Bankruptcy Court heard live testimony from AISC's president, Mr. Jesse Fuller. [9] at 2. Mr. Fuller testified that, *inter alia*, WGIN was AISC's primary outside creditor, and AISC had not realized any income during the months preceding its bankruptcy petition. *Id.* at 7-14.

The Bankruptcy Court ultimately granted the Motion to Dismiss, finding, *inter alia*:

[W]hat you really get from the bankruptcy to begin with is just a stay, and a stay on the eve of litigation, which is one thing if it is a going-concern operation or a company with multiple claims against it, but it's another thing entirely when you've got what is essentially a single creditor case on the eve of litigation. What you do is you frustrate the trial, but in the end, you do nothing of substance that changes whether or not that trial will go forward.

…

This is, at its essence, a single creditor dispute. Now, I understand that you've been able to find a second creditor, but I think that while that is of some relevance, it doesn't carry the day. It's a small amount. It was not immediately disclosed, and we know that the initial disclosures versus the subsequent disclosures raises all sorts of concerns in the court, especially when the secondary disclosures were made in a self-serving manner in the context of a contested proceeding.

…

[C]ommenc[ing] [bankruptcy] primarily for the purpose of putting off this litigation . . . is a justifiable act in a larger context in other cases where cases are commenced on the eve of trial because there are numerous assets to preserve or other creditors that must be balanced, that wasn't the case here; that this case very clearly was frustrating the one and only main creditor in this case from proceeding with the remedy it had worked its way to and does nothing truly other than defeat them for a period of time and then allow them to go forward.

…

Quite honestly, this is all indicia of bad faith, and I find under the facts and circumstances unique to this case, that the movant has established his case.

[9] at 40, 45-47. Both parties filed timely motions to reconsider different portions of the Bankruptcy Court's judgment, both of which were denied. [8] at 5-6. On March 22, 2016, AISC filed a timely Notice of Appeal. *Id.* at 7.

III. **Analysis**

The question for this Court is whether the Bankruptcy Court committed clear error when it determined that AISC's Chapter 7 petition was filed in bad faith. For the reasons discussed below, the judgment of the Bankruptcy Court is affirmed.

A. **"Bad Faith" Is A Fluid Standard**

The Bankruptcy Code provides that "[t]he court may dismiss a case under this chapter only after notice and a hearing and only for cause." 11 U.S.C. § 707(a). While the phrase "for cause" is not expressly defined in that section, federal courts in this Circuit have interpreted it to include a lack of good faith in filing the bankruptcy petition. *In re Collins,* 250 B.R. 645, 653 (Bankr. N.D. Ill. 2000) ("Bad faith can constitute cause for dismissal under § 707(a)."); *see also In re American Telecom Corp.*, 304 B.R. 867, 869 (Bankr. N.D. Ill. 2004) ("[T]he concept of 'cause' has been interpreted to include a lack of good faith in filing the bankruptcy petition[.]"). To determine if a petition has been filed in bad faith, the Court "must look at the totality of the circumstances surrounding both objective and subjective considerations in each case in order to determine whether the Bankruptcy Code is being used properly and fairly, and, consequently, whether 'cause' exists to dismiss the case." *In re American Telecom Corp.*, 304 B.R. at 869 (internal citation omitted). Ultimately, the "facts required to mandate dismissal based on a lack of good faith

5

are as varied as the number of cases." *In re Bingham*, 68 B.R. 933, 935 (Bankr. M.D.Pa. 1987).

Courts have specifically found that a debtor who files a petition for bankruptcy as a mere "litigation tool" has acted in bad faith. *In re American Telecom Corp.*, 304 B.R. at 869. The court in *American Telecom Corp.* specifically explained that:

> Chapter 7 of the Bankruptcy Code was never intended to serve merely as a litigation tool for two shareholders holding on to a corporate shell that has not conducted any business activity for two years. [The Court] also believes that this bankruptcy case does not adequately implicate any of the policies that the U.S. Bankruptcy Code was enacted to serve. A major consideration that has led other courts to conclude that a Chapter 7 case should be dismissed is the fact that the case is primarily a tool for thwarting the collection efforts of a single creditor holding a disputed money judgment.

*Id.* at 873. In short, *American Telecom Corp.* stands for the general proposition that debtors may not cloak themselves in the protection of the Bankruptcy Code to delay parallel meritorious litigation with their primary creditor. This maxim is generally accepted in bankruptcy courts across the country. *See, e.g., In re Lombardo,* 370 B.R. 506, 512-13 (Bankr. E.D.N.Y. 2007) (dismissing Chapter 7 petition as being filed in bad faith, given that moving creditor held majority of debt and, outside of moving creditor's litigation, "there was no evidence that the Debtor suffered any sudden loss of income").

### B. AISC's Conduct Justified a Finding of Bad Faith

The Bankruptcy Court's decision here was based upon "the facts and circumstances unique to this case," including, *inter alia*, the Bankruptcy Court's determination that:

- WGIN was AISC's "only main creditor";

- AISC, as a practical matter, had not been in business for months prior to filing for bankruptcy;

- AISC filed for bankruptcy two business days prior to trial in the underlying state court action with WGIN; and

- AISC's supplemental disclosures identifying an additional creditor were filed after the Motion to Dismiss.

[9] at 40, 45-47.

At bottom, the Bankruptcy Court pursued a holistic, fact-intensive inquiry, and in the process identified a variety of factors all indicating that AISC's bankruptcy petition was filed merely to delay the underlying state court litigation. Far from being clearly erroneous, the Bankruptcy's Court's decision reflects precisely the sort of thoughtful analysis compelled by governing case law, and its ultimate determination that the petition was filed in bad faith comports with the weight of the evidence.

### C. AISC's Arguments Are Inapposite

AISC's primary arguments on appeal concern the bankruptcy petition's practical implications for the underlying state court litigation. AISC specifically argues that: (1) it lacked the financial resources to pay any judgment that might have been rendered by the state court; and (2) it did not gain any "advantage" in the

7

state court litigation by virtue of the bankruptcy petition's filing, such that the petition was necessarily filed in good faith. [10] at 5-7. These arguments fail to properly address the question before this Court.

This Court is asked to determine whether it was "clearly erroneous" for the Bankruptcy Court to conclude, based upon the totality of "circumstances surrounding both objective and subjective considerations" in this case, that AISC was not using the Bankruptcy Code "properly and fairly." *In re American Telecom Corp.*, 304 B.R. at 869. The Bankruptcy Court specifically found that AISC filed its petition here to delay the underlying state court litigation, [9] at 47, and case law in this Circuit teaches that the Bankruptcy Code may not be invoked by a debtor merely to delay litigation with its primary outside creditor. *In re American Telecom Corp.*, 304 B.R. at 869. AISC's arguments concerning the potential practical ramifications of the bankruptcy petition's filing are unavailing.

AISC also contends that the Motion to Dismiss should not have been granted because WGIN only sought a bad faith finding "for the purpose of seeking sanctions." [10] at 6. This argument similarly misconstrues the nature of this Court's review. Here again, WGIN's "purpose" in filing its Motion to Dismiss is not relevant to the question of whether the Bankruptcy Court's factual finding of bad faith was "clearly erroneous."

Finally, AISC asks this Court to resolve a question of Illinois law that is not actually implicated by today's inquiry. More specifically, AISC suggests that in order to properly evaluate the Bankruptcy Court's decision, this Court must first

state court litigation by virtue of the bankruptcy petition's filing, such that the petition was necessarily filed in good faith. [10] at 5-7. These arguments fail to properly address the question before this Court.

This Court is asked to determine whether it was "clearly erroneous" for the Bankruptcy Court to conclude, based upon the totality of "circumstances surrounding both objective and subjective considerations" in this case, that AISC was not using the Bankruptcy Code "properly and fairly." *In re American Telecom Corp.*, 304 B.R. at 869. The Bankruptcy Court specifically found that AISC filed its petition here to delay the underlying state court litigation, [9] at 47, and case law in this Circuit teaches that the Bankruptcy Code may not be invoked by a debtor merely to delay litigation with its primary outside creditor. *In re American Telecom Corp.*, 304 B.R. at 869. AISC's arguments concerning the potential practical ramifications of the bankruptcy petition's filing are unavailing.

AISC also contends that the Motion to Dismiss should not have been granted because WGIN only sought a bad faith finding "for the purpose of seeking sanctions." [10] at 6. This argument similarly misconstrues the nature of this Court's review. Here again, WGIN's "purpose" in filing its Motion to Dismiss is not relevant to the question of whether the Bankruptcy Court's factual finding of bad faith was "clearly erroneous."

Finally, AISC asks this Court to resolve a question of Illinois law that is not actually implicated by today's inquiry. More specifically, AISC suggests that in order to properly evaluate the Bankruptcy Court's decision, this Court must first

determine whether a state court judgment against a corporate defendant like AISC is a prerequisite to "piercing the corporate veil" and seeking recovery against the defendant's principals. [10] at 6. AISC has once again missed the point. Such a proposed ruling is not relevant to this Court's deferential review of the Bankruptcy Court's factual determinations.

## IV. Conclusion

This Court finds that the Bankruptcy Court's bad faith determination was consistent with the weight of the evidence, based upon the totality of the circumstances. Accordingly, the judgment of the Bankruptcy Court is affirmed. Civil case terminated.

Dated: September 27, 2016                     Entered:

_____
John Robert Blakey
United States District Judge